UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SOUTHWESTERN BELL TELEPHONE L.P. ) <br> d/b/a SBC Missouri, successor-in- ) <br> interest to Southwestern Bell ) <br> Telephone Company, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PATRICIA KRAKOWSKI, ) <br> ) <br> Defendant. ) | No. 4:05CV680 FRB |

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendant Patricia Krakowski's Motion for Summary Judgment (filed April 18, 2006/ Docket No. 20). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Southwestern Bell Telephone L.P. (SBC) brings this cause of action alleging that defendant Patricia Krakowski's negligence in the operation of her motor vehicle caused or contributed to cause another motor vehicle to collide with certain property of SBC, thereby causing SBC damage. Specifically, SBC alleges that defendant Krakowski was involved in a motor vehicle accident whereby a third party vehicle struck defendant Krakowski's vehicle, careened off the road and thereafter struck a remote terminal box owned and operated by plaintiff SBC. In its Complaint, plaintiff contends that defendant Krakowski caused or

contributed to cause its damages in that defendant's negligence resulted in the third party vehicle striking her vehicle which ultimately resulted in the third party vehicle striking the remote terminal box.  Plaintiff specifically contends that defendant Krakowski failed to keep a careful lookout; drove at an excessive rate of speed; drove at an excessive rate of speed for the weather and/or road conditions; drove at a rate of speed that made it impossible for her to stop within the range of her visibility; failed to operate her vehicle in a safe manner; failed to operate her vehicle with the highest degree of care; and/or failed to stop, slacken her speed, swerve, sound a warning, and/or make a proper attempt to avoid the collision with the third party vehicle.  Plaintiff seeks damages in the amount of $115,413.43.

Defendant Krakowski now moves for summary judgment arguing that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law.  Plaintiff has responded to the motion to which defendant has replied.  Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  The burden of proof is on the moving party to set forth the basis of her motion, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and the court

must view all facts and inferences in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. <u>Id.</u> The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. <u>Celotex</u>, 477 U.S. at 324.

The Supreme Court has noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action'." <u>Celotex</u>, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." <u>Id.</u> at 587.

### I. Evidence Before the Court on the Motion

During the afternoon of Saturday, June 17, 2000, defendant Krakowski was operating her motor vehicle on southbound Woods Mill Road near the intersection of Woods Mill and Clayton Roads in Town and Country, Missouri. Southbound Woods Mill Road is

comprised of two traffic lanes. At the relevant time, defendant was traveling in the right southbound lane at approximately thirty miles per hour. The speed limit in the area was forty miles per hour. Defendant's daughter was a passenger in defendant's vehicle, seated in the front passenger seat. (Krakowksi Depo. at 13, 15, 27; Hall Depo. at 7-8; Deft.'s Exh. D, Hunt Affid., Exh. 1.)

From her entry point onto Woods Mill Road, defendant had traveled less than one mile when she observed a large white vehicle, traveling northbound, cross over from the northbound lanes of Woods Mill Road into the southbound lanes. It appeared to defendant that the white vehicle was traveling fast and was skidding, coming toward her vehicle head on. When defendant realized the white vehicle was out of control, she removed her foot from the accelerator and slammed her foot on the brake to stop her vehicle. Defendant did not know the angle at which the white vehicle would continue to travel inasmuch as the vehicle was sliding. Defendant did not attempt to swerve. The white vehicle did not stop and ultimately struck defendant's vehicle in the right lane of southbound Woods Mill Road, impacting the front right quarter panel of defendant's vehicle. Upon striking defendant's vehicle, the white vehicle careened off the road and subsequently struck a remote terminal box owned and operated by plaintiff SBC, resulting in damage to SBC's property. (Krakowski Depo. at 13-14, 30-31, 44-46; Hall Depo. at 17-18, 23-24.)

From the time defendant entered onto Woods Mill Road, she was looking at the road and oncoming traffic. Defendant drove with extra caution at the time inasmuch as it had rained earlier in the day and the pavement was wet. Defendant also drove with extra caution at that location because she was approaching a shopping center entrance off of southbound Woods Mill Road for which there was no traffic signal and for which northbound traffic must make an unprotected left turn across the southbound lanes to gain entry. At the time of the accident, defendant was familiar with the area inasmuch as she had lived in the area for approximately twenty-four years. (Krakowski Depo. at 14, 26-29, 36-37.)

Defendant estimates that three or four seconds elapsed from the time she first saw the white vehicle to the time the white vehicle impacted her vehicle. Although she had slammed on her brakes, defendant had not obtained a complete stop of her vehicle prior to impact. The impact itself caused defendant's vehicle to stop, with defendant describing the events as happening "all at one time, it was so quick." Defendant did not swerve to the right believing there to be a curb, median or other obstacle preventing her from doing so. Defendant did not swerve to the left because she would have entered another traffic lane. Defendant believed she had no time to react in any way other than to brake. (Krakowski Depo. at 24, 31-32.)

At or around the time of the accident, multiple utility

poles lined the right shoulder of the right southbound lane of Woods Mill Road near the shopping center intersection, with such poles located between the road's shoulder and an adjacent sidewalk running parallel to the road. (Pltf.'s Exh. 5, Pippin Affid., Exhs. 5A-5C.)

The manner by which the collision occurred between the white vehicle and defendant's vehicle resulted in the white vehicle deflecting from defendant's vehicle at such an angle so as to cause the white vehicle to continue to travel and ultimately strike plaintiff SBC's terminal box. (Oldham Depo. at 17.)

## II. Discussion

Plaintiff SBC claims that defendant Krakowski's negligent operation of her motor vehicle caused the white vehicle to strike her in such a manner so as to cause, or contribute to cause, the white vehicle to have careened off the road and strike SBC's property. Plaintiff specifically contends in its Complaint that defendant Krakowski was negligent by failing to keep a careful lookout; driving at an excessive rate of speed; driving at an excessive rate of speed for the weather and/or road conditions; driving at a rate of speed that made it impossible for her to stop within the range of her visibility; failing to operate her vehicle in a safe manner; failing to operate her vehicle with the highest degree of care; and/or failing to to stop, slacken her speed, swerve, sound a warning, and/or make a proper attempt to avoid the

collision with the third party vehicle. For the following reasons, and on the evidence before the Court, defendant is entitled to judgment as a matter of law on plaintiff's claims.

A. Rate of Speed

The undisputed evidence before the Court shows that defendant Krakowski's rate of speed at the relevant time did not exceed the speed limit nor was excessive given the weather and/or road conditions. Indeed, the undisputed evidence shows defendant to have been driving at a rate of speed below the speed limit and to have been driving cautiously because of her cognizance of wet road conditions and her cognizance of the nature of the traffic in the specific area, namely, the potential for northbound traffic to turn and travel across the southbound lanes of Woods Mill Road to gain entry to a shopping center located along the southbound lanes. Further, the undisputed evidence shows defendant to have been aware of this traffic pattern and thus knew to exercise caution, inasmuch as, at the relevant time, she had lived in the area for approximately twenty-four years.

Plaintiff has provided no argument or admissible evidence to rebut defendant's showing that defendant did not negligently operate her vehicle at a rate of speed which caused or contributed to cause the white vehicle to collide with her vehicle in such a manner so as to cause damage to plaintiff's property, and defendant should be granted judgment as a matter of law on such claim.

B.  Careful Lookout; Failure to Stop and/or Swerve

A motorist's duty to keep a careful lookout requires her to exercise the highest degree of care to discover the presence of other persons and objects upon the streets and highways and to become aware of dangerous situations and conditions. Wiskur v. Johnson, 156 S.W.3d 477, 480 (Mo. Ct. App. 2005). This "highest degree of care" requires every motorist to maintain a careful lookout both ahead and laterally to become aware of dangerous situations and conditions. Luallen v. Reid, 58 S.W.3d 50, 53 (Mo. Ct. App. 2001). To make a submissible case of negligent failure to keep a careful lookout, substantial evidence must show that the breach of that duty was the proximate cause of the accident, that is, that the driver of the colliding vehicle, exercising the highest degree of care, could have seen the other vehicle in time and with sufficient distance to have taken effective precautionary measures to avoid the accident, and failed to do so. See Wiskur, 156 S.W.3d at 480; American Family Mut. Ins. v. Robbins, 945 S.W.2d 52, 55 (Mo. Ct. App. 1997). Speculative deductions do not constitute substantial evidence. Robbins, 945 S.W.2d at 55.

The undisputed evidence in this cause shows that upon entering Woods Mill Road and continuing southbound thereon, defendant Krakowski was aware of the conditions of the road and maintained her attention on the road and associated traffic. Defendant was not distracted by either her surroundings or any

occurrences within her vehicle. Defendant observed the oncoming northbound traffic and indeed saw the white vehicle at the time it crossed over from the northbound lanes of Woods Mill Road into the southbound lanes.[1] Nothing before the Court shows the distance

---

[1]At her deposition, defendant Krakowski was asked about the extent of damage to her vehicle which was caused by the collision with the white vehicle, and where such damage was located on her vehicle. In relation to this line of questioning, defendant was asked as to what angle, if any, her car was positioned in the road at the time of impact, as well as to the angle at which the white vehicle was positioned when it struck her vehicle:

> Q: So your car was hit on your front passenger side?
> A: Yes.
> Q: It wasn't head on to the front of your car?
> A: It looked head on. I don't know if she was going sideways, but it looked like she was coming at me head on.
> Q: And was your car positioned, generally speaking, straight in the road?
> A: Yes.
> Q: You weren't at an angle or anything like that?
> A: No.
> Q: And do you recall what angle vehicle 1 [the white vehicle] was in when it hit yours?
> A: Since she was sliding, I thought – I just looked up and saw a big car coming straight at me. I didn't know where it was going to end up hitting me. I just stopped.

(Krakowski Depo. at 45-46.)

Plaintiff contends that defendant's testimony that she "looked up" shows that defendant was not watching the road at the time of the accident and thus failed to keep a careful lookout. During this same deposition, however, defendant had previously responded to specific questions directly addressing the issue of where she was looking leading up to and at the time of the accident, what she observed, and her attentiveness to the road. (Krakowski Depo. at 26-30, 36-37.) Given defendant's specific and unequivocal testimony regarding her attentiveness to the road when so

-9-

between the two vehicles at the time the white vehicle crossed over; nor does any evidence show at what speed the white vehicle was traveling.[2] Instead, the undisputed evidence shows that when the defendant saw the white vehicle, she observed it to be traveling "fast," skidding and to be coming toward her vehicle head on, at which time defendant slammed her foot on the brake in an attempt to stop her vehicle.

> A motorist has a duty to stop, swerve, slacken speed or sound a warning when he or she knows or by the exercise of the highest degree of care could have known that there was a reasonable likelihood of collision in sufficient time to take such preventive measures. If reasonable minds could differ as to when a driver knew or could have known of a reasonable likelihood of collision, the question of when the duty arises to take evasive action is for the jury.

McHaffie by McHaffie v. Bunch, 891 S.W.2d 822, 828 (Mo. banc 1995) (citations omitted).

---

questioned and the unrelated context in which defendant made the subsequent conversational remark that she "looked up and saw a big car coming," any inference that such unrelated remark creates a genuine issue as to whether defendant was watching the road is unreasonable. See Assam Drug Co., Inc. v. Miller Brewing Co., Inc., 798 F.2d 311, 319 (8th Cir. 1986) (reliance on ambiguous and unfounded deposition statements is insufficient to raise a genuine issue of fact).

[2]Indeed, plaintiff admits in response to defendant's Statement of Uncontroverted Material Facts that "its expert witness did not use any formulas, make any mathematical computations, calculate any coefficiencies of friction, determine the weight or mass of any vehicle or figure out the precise speed of any vehicle, nor did he measure feet and distances between the vehicles. (Pltf.'s Resp. to Deft.'s Stmt. of Uncontroverted Mat. Facts, p. 11, para. A.28.)

The duty to swerve or to take other evasive action does not arise, in the case of oncoming traffic, until the driver knows or should know of the likelihood that the opposite vehicle will invade the wrong side of the roadway. Robbins, 945 S.W.2d at 55. A driver who has time to stop also has time to swerve. Hollis v. Blevins, 927 S.W.2d 558, 564 (Mo. Ct. App. 1996).

At her deposition, defendant estimated that the collision occurred three or four seconds subsequent to her first observance of the white vehicle. The undersigned notes, however, that defendant immediately testified thereafter that she was "not sure" of the exact time frame[3] and unequivocally testified throughout her deposition that the events happened so quickly that she had no time to do anything but to attempt to stop. (Krakowski Depo. at 24, 32.) Plaintiff seizes upon this three- or four-second estimate to support its contention that there exists a factual question as to whether there existed sufficient time for defendant to avoid the

---

[3]The specific testimony adduced at defendant Krakowski's deposition is as follows:

> Q: . . .
>    Did you see vehicle 1 [the white vehicle] before it hit your car?
> A: Yes.
> Q: How soon before the impact did you see vehicle 1?
> A: Seconds before.
> Q: 10 seconds, 2 seconds?
> A: 3, could be 4. I'm not sure. It happened quickly.

(Krakowski Depo. at 24.)

accident. Relying on Lamfers v. Licklider, 332 S.W.2d 882, 885 (Mo. 1960); Allen v. Perry, 722 S.W.2d 98, 101 (Mo. Ct. App. 1986); and Allan v. Read, 433 S.W.2d 58, 61-62 (Mo. Ct. App. 1968), plaintiff argues that Missouri courts recognize four seconds to be a sufficient amount of time for a motorist to stop or swerve to avoid a collision, and that therefore, a jury question exists in the instant cause as to whether defendant could have stopped or swerved within the admitted four seconds. In the circumstances of this case, plaintiff's argument is misplaced.

In Lamfers, there existed conflicting testimony supporting differing factual theories as to the movement of the relevant vehicles and the relative time during which the alleged offending driver could have avoided the collision. Specifically, the plaintiff in Lamfers presented evidence that defendant had "so suddenly turned left and immediately into the pathway of plaintiff's southbound vehicle . . . that plaintiff could not avoid a collision"; and defendant had presented evidence that he had traveled into plaintiff's pathway, was compelled to stop there, and was in such a stopped position for about four seconds before the vehicles collided. Lamfers, 332 S.W.2d at 885. In light of this conflicting evidence, the Lamfers court held, and this Court agrees, that "[o]f course the parties were entitled to have their respective theories of fact submitted to the jury if the evidence adduced justified the submissions." Id.

In Allen, there likewise existed conflicting evidence between the parties as to the occurrence of the accident. Plaintiff presented evidence and testimony that he delayed in swerving to the right to avoid the collision inasmuch as there was traffic to his right, that he had to wait for such traffic to pass before swerving, and that he swerved to the right as soon as possible after the traffic had passed but was unable to avoid the collision by that time. The opposing parties, however, presented contrary evidence, and specifically, that the vehicles' positions subsequent to impact showed the collision to have occurred within plaintiff's lane of traffic and not to the right of such lane as would have occurred if plaintiff had indeed swerved; and that there existed no evidence identifying the car which was passing on plaintiff's right or that such car stopped after the accident. Allen, 722 S.W.2d at 100-01. In addition, evidence was adduced regarding the vehicles' measured rates of speed and specifically calculated distance(s) between the vehicles at relevant points in time, upon which the court determined that plaintiff had 4.3 seconds within which to avoid the collision. The court therefore held that, with the conflicting evidence as to what occurred, a factual question existed as to whether plaintiff could have avoided the collision within such time. Id. at 101.

Finally, in Allan, there was specific evidence presented as to the measured distance between the two vehicles and the rates

of speed each vehicle was traveling at the moment the defendant driver became aware that an oncoming vehicle was in his lane of traffic. With such specifically measured factors, the court calculated that defendant collided with the oncoming vehicle four seconds after he first saw the vehicle and, when considering a reaction time of .75 seconds, that a jury could conclude that the defendant could have avoided the accident within the available time and distance, specifically, 3.25 seconds and 284 feet. Allan, 433 S.W.2d at 61. Further, in Allan, there was evidence adduced that at the time of the collision there was no barrier, obstacle or other circumstance which would have prevented defendant from swerving either to the right or to the left without jeopardizing his own safety. Id. at 62.

Contrary to the above cited cases, there is no conflicting evidence in this cause as to the movement of the relevant vehicles or as to defendant's action upon realizing the likelihood of a collision. The evidence here is undisputed that defendant Krakowski slammed on her brakes when she realized the white vehicle was out of control and traveling on course to collide with her own vehicle. The undisputed evidence shows that despite slamming on her brakes, defendant Krakowski did not obtain a full stop prior to impact, but that the impact and the stop of her vehicle occurred simultaneously, "all at one time[.]" Defendant's equivocal estimate that she saw the white vehicle three or four

- 14 -

seconds prior to impact, with nothing more, is insufficient as a matter of law to support a claim that defendant had sufficient time within which to avoid the collision. See Johnson v. Bush, 418 S.W.2d 601, 605 (Mo. Ct. App. 1967); see also Lambert Bros., Inc. v. Tri City Constr. Co., 514 S.W.2d 838, 845 (Mo. Ct. App. 1974).

This insufficiency is further exacerbated by the fact that no evidence shows the distance between the two vehicles at the time the white vehicle crossed over into the southbound lanes or at what speed the white vehicle was traveling. Where there exists no competent evidence establishing the distance between the two affected vehicles when the wrong-way vehicle entered the wrong lane and the time that elapsed between the moment the vehicle entered the wrong lane and the collision, "there is no way to gage the amount of time [a driver] had to react" and any conclusion that sufficient time existed to take evasive action would be based solely on speculation. Robbins, 945 S.W.2d at 55-56. Speculation cannot be considered substantial evidence and is insufficient to support a submissible claim of negligence. Id. at 56.

Finally, the evidence before the Court is undisputed that defendant perceived there to be a danger to herself if she were to swerve to either the right or the left inasmuch as some obstacle was present on the right, and another traffic lane was present on the left. While plaintiff argues that there existed only a shoulder on the right and not a curb or median as defendant

testified, the undersigned notes that at her deposition, conducted five and one-half years after the accident, defendant specifically testified, "I'm not sure what's there, I thought a curb at the time. I don't know, *it was something that it couldn't go to the right*." (Krakowski Depo. at 32. Emphasis added.) Plaintiff has presented evidence that obstacles did indeed exist to the right of the southbound lanes of Woods Mill Road at the relevant area, and specifically, multiple telephone poles lining the road between the shoulder and the sidewalk. (Pltf.'s Exh. 5, Pippin Affid., Exhs. 5A-5C.) While there may be a dispute as to what specific obstacle defendant perceived to prevent her from swerving to the right, the exact construct is immaterial inasmuch as the evidence is not in dispute that there was indeed an obstacle present. In addition, to the extent plaintiff argues that no evidence exists that there was any traffic in the left southbound lane and thus that defendant could have swerved into the left lane, the undisputed evidence shows defendant to have perceived that she could not move to the adjacent traffic lane and that her only alternative was to stop.[4]

The undisputed evidence before the Court shows that

---

[4]The police report of the incident shows there to have been a vehicle located in the left southbound lane of Woods Mill Road to the rear left side of defendant's vehicle at the time of the collision, and that the driver of such vehicle stopped and provided a statement to the police, including his name, address and telephone number. (Deft.'s Exh. D, Hunt Affid., Exh. 1.) In its present form, this portion of the police report is not admissible and thus is not considered by the Court in determining the instant motion for summary judgment.

testified, the undersigned notes that at her deposition, conducted five and one-half years after the accident, defendant specifically testified, "I'm not sure what's there, I thought a curb at the time. I don't know, *it was something that it couldn't go to the right*." (Krakowski Depo. at 32. Emphasis added.) Plaintiff has presented evidence that obstacles did indeed exist to the right of the southbound lanes of Woods Mill Road at the relevant area, and specifically, multiple telephone poles lining the road between the shoulder and the sidewalk. (Pltf.'s Exh. 5, Pippin Affid., Exhs. 5A-5C.) While there may be a dispute as to what specific obstacle defendant perceived to prevent her from swerving to the right, the exact construct is immaterial inasmuch as the evidence is not in dispute that there was indeed an obstacle present. In addition, to the extent plaintiff argues that no evidence exists that there was any traffic in the left southbound lane and thus that defendant could have swerved into the left lane, the undisputed evidence shows defendant to have perceived that she could not move to the adjacent traffic lane and that her only alternative was to stop.[4]

The undisputed evidence before the Court shows that

---

[4]The police report of the incident shows there to have been a vehicle located in the left southbound lane of Woods Mill Road to the rear left side of defendant's vehicle at the time of the collision, and that the driver of such vehicle stopped and provided a statement to the police, including his name, address and telephone number. (Deft.'s Exh. D, Hunt Affid., Exh. 1.) In its present form, this portion of the police report is not admissible and thus is not considered by the Court in determining the instant motion for summary judgment.

defendant saw the white vehicle at the moment the white vehicle crossed over into the southbound lanes of traffic on Woods Mill Road, that defendant acted to stop her vehicle immediately upon realizing that there was a reasonable likelihood of collision with the white vehicle, that defendant's vehicle stopped at the moment of impact, and that defendant perceived various obstacles and conditions to prevent her from swerving to avoid the collision. Plaintiff has failed to present competent evidence demonstrating otherwise. On the evidence before the Court, therefore, it cannot be said that genuine issues of material fact exist as to whether defendant was negligent in operating her motor vehicle in such a manner so as to cause or contribute to cause damage to plaintiff SBC's terminal box.

> "[It is a principle in the law of negligence recognizing that, where motorist is confronted with a sudden emergency, not created in whole or in part by his own negligence, he should not be held to the same accuracy of judgment as would be required if he had time for calm deliberation and that, if he exercises such care as a very careful and prudent person would have exercised under the same circumstances, he should not be convicted for an error in judgment or miscalculation as to space, even though it might appear subsequently that a wiser and safer course could have been pursued."

Hollis v. Blevins, 927 S.W.2d 558, 565 (Mo. Ct. App. 1996) (quoting Leek v. Dillard, 304 S.W.2d 60, 68 (Mo. Ct. App. 1957)).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Patricia Krakowski's Motion for Summary Judgment (Docket No. 20) is granted.

Judgment shall be entered accordingly.

_____
UNITED STATES MAGISTRATE JUDGE

Dated this _13th_ day of September, 2006.